## KITSON CO. v. LATTIMER–STEVENS CO.
### No. 4719.

Circuit Court of Appeals, Third Circuit.
May 7, 1932.

Busser & Harding, of Philadelphia, Pa. (Frank S. Busser and George J. Harding, both of Philadelphia, Pa., of counsel), for appellant.

Kennard N. Ware, of Philadelphia, Pa., George M. Finckel, of Columbus, Ohio, and Howson & Howson, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In this case there has been such a large amount of discussion about words, terms, and disclaimers that the actual thing invented has been lost sight of. When we turn to the actual physical invention made, the case solves itself.

Meters are suspended from inlet and outlet pipes and were subject to shifting conditions, increase or decrease of strains, with consequent disalignment and possible rupture. Prior to the patent, the structure as a whole was so rigidly constituted that there was no play or allowance by which the structure could automatically adjust itself to the strains and stress of these alignment changing factors. Such prior art is fairly stated in the specification as follows: "Gas meters are often made of sheet metal soldered together by hand and as a consequence are not uniform in size and relative arrangement of their members. The terminals of the inlet and outlet pipes are not uniformly in line and do not always lie in the same plane. Indeed it has been said that no two meters are exactly alike, hence to connect such meters with the street and house pipes is troublesome; and the meters or pipes are often left in a strained condition resulting sometimes in a rupturing of the meter. A variety of means for meeting these conditions have been proposed or patented but such means have been more or less complicated involving many parts and much care in application and adjustment."

In this state of the art the patentee conceived the idea of providing a member of simple but novel character upon which all the changes would center and which would yield to pressure when strain was upon it and return to normal when the strain was removed. This idea is happily embodied in the flexible metal strip 8 shown in figure 1 of his patent, described as follows in his specification: "In the views 5 designates the meter which has inlet and outlet pipes 6 and 7 respectively. The hanger in the present invention consists of a bar 8 of steel or other suitable and flexible metal made of suitable length and otherwise of such dimensions that it can, if held when attached to connector pipe sections 18 and 19 in the hand of a man of ordinary strength be fairly easily twisted tortionally and flexed laterally. The inlet and outlet connector pipe sections or couplings 18 and 19 are provided with lateral ears 20 and 21 respectively said ears being provided with grooved or sunken seats for the ends of the bar 8. These seats are each made wider than the width of the bar 8 so that the bar and connector sections can when the fastening means are released rock somewhat vertically with reference to each other. The lateral ears 20 and 21 are each slotted as shown at 22 and

23 and the ends of the bar are provided with threaded pins to pass through said slots and receive washers and nuts as shown at 24 for securing the ends of the bar when the adjustment has been made"—and described in his claim as follows: "* * * Sections consisting of a thin flat bar of resilient material tortionally deformable to fit flatwise at its ends on said seats."

We find nothing in the proceedings in the patent office which limited, lessened, or deprived his simple invention of due protection. The various objections and verbal changes made were but an effort to find fitting descriptive language for this new member, and eventually resulted in describing it physically and functionally as "a thin flat bar of resilient material tortionally deformable to fit flatwise at its ends on said seats." By its thinness, its flatness, its resilience, and its deformability, to which may be added its cheapness and simplicity, the patentee made a meter suspension which automatically omitted all changes of alignment in this receptive bar 8.

All of these advantages the defendant obtains in its bar by use of which it seeks to escape infringement by bending up one edge of such flat bar so as to make the bar stiffer. In other words, he has made a non-functional change of bar form, but held onto the novel functional efficiency of the patentee's bar. Indeed, it was open to it to use a flat cast-iron nonflexible bar and thus avoid all question of infringement, but instead of so doing it used the same flexible material as the patentee. In that respect the court below held, and we agree with its holding: "The defendant's angle bar has all these characteristics. The mere facts that it is a little more difficult to deform tortionally and considerably more difficult to deform laterally, that it gives a little less upon being tightened, and that it is generally stiffer and less absorbent of (or more repellant to) shock, does not prevent it from embodying substantially the essential characteristics of the invention."

In view of these facts, the court below rightly enjoined further violation of the patent and ordered an accounting. We find no error in its so holding. We are of opinion the connecting bar in defendant's structure was the element that enabled it to take the plaintiff's business away from it. This fact brings the case within the principle of Crosby Steam Gage & Valve Co. v. Consolidated Safety Valve Co., 141 U. S. 441, 12 S. Ct. 49, 35 L. Ed. 809, where it was held: "Where the entire value, as a marketable article of a machine is properly and legally attributable to the patented invention of plaintiff, the plaintiff is entitled, in an action for infringement, to recover the entire profit of the manufacture and sale of the machine by defendant."

So holding, the decree below is affirmed.